**In the Matter of the ESTATES OF Obed KALWITZ, Sr., and Helen Kalwitz, Deceased,**

**Eugene Kalwitz, Appellant–Petitioner,**

v.

**Sharon Grieger, Appellee–Respondent.**

No. 46A03–0911–CV–546.

Court of Appeals of Indiana.

March 17, 2010.

---

Cheryl B. Stephan, Timothy M. Mikula, Mikula and Stephan, P.C., LaPorte, IN, Attorneys for Appellant.

V. Michael Drayton, Sallwasser and McCain, LLP, LaPorte, IN, Attorney for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Eugene Kalwitz appeals the trial court's order denying his petition to reopen the estates of Obed Kalwitz, Sr., and Helen Kalwitz ("the Estates"). Eugene raises several issues on appeal, but we address only the following dispositive issue: whether Eugene timely filed his petition to reopen the Estates.

We affirm.

### FACTS AND PROCEDURAL HISTORY

Obed Kalwitz, Sr., died in 1989 and Helen Kalwitz died in 1995. Eugene Kalwitz and Sharon Grieger, two of their children, were appointed co-personal representatives of the Estates. After more than a decade of litigation, including two appeals, the trial court ordered the parties to seek mediation in a final attempt to resolve the numerous issues in dispute.

On August 11, 2006, the parties and their counsel signed a Mediation Settlement Agreement ("Agreement"). The Agreement stated, in relevant part, that "[i]t is now agreed that Eugene shall take the 122 acres in Cass Township [in LaPorte County], West of U.S. 421 (north of RR)...." Appellant's App. at 77. The Agreement then provided, "[Attorney Steven] Kray shall immediately prepare all

necessary documents to close the [E]state[s] ... in compliance with the terms of this agreement." *Id.* at 79.

On September 1, 2006, Eugene and Sharon met at Attorney Kray's office to sign the various prepared documents. According to Eugene, he and Sharon were given fourteen documents to sign, included the personal representatives' deed conveying the 122 acres in Cass Township. Eugene later stated, "[a]t no time were we given the opportunity to review each document[. W]e simply signed the deeds and I assumed that they were correct." *Id.* at 85. The personal representatives' deed conveying the 122 acres stated that that property was "convey[ed] to Eugene D. Kalwitz and Sharon K. Grieger, as tenants in common...." (hereinafter, "the Deed"). *Id.* at 106. Eugene and Sharon each executed the Deed, and the Deed was duly recorded on March 30, 2007.

On August 10, 2007, Eugene and Sharon executed and filed with the trial court the co-personal representatives' verified final account and petition for authority to distribute the remaining assets and to close the Estates. The Agreement and the Deed were incorporated into that document. Specifically, the final account stated that the attached deeds "set out how the real estate has been distributed to decedents' beneficiaries pursuant to the terms of the [Agreement]." *Id.* at 36. On December 21, 2007, the trial court entered its Final Decree approving the verified final account and attachments thereto, subject to a supplemental report. Eugene and Sharon filed the supplemental report for the Estates on January 4, 2008. That same day, the trial court entered an order approving the supplemental report, dis-

charging Eugene and Sharon as co-personal representatives, and closing the Estates.

More than fourteen months later, on March 18, 2009, Eugene filed a verified petition to reopen the Estates. In that petition, Eugene alleged that, "through scrivener[']s error, [the Deed] transferred said 122 acres ... to Eugene D. Kalwitz and Sharon K. Grieger, as tenants in common ... [,] the effect[ of which] is to wrongfully deprive Eugene D. Kalwitz of his inheritance[ and] to breach the mediation agreement...." *Id.* at 52. In a subsequently filed affidavit, Eugene stated that he discovered the alleged error in the Deed on December 22, 2008.

On May 19, Sharon filed her motion for summary judgment on Eugene's petition. Among other things, Sharon alleged that Eugene's petition to reopen the Estates was untimely as a matter of law. Eugene filed his response on July 16. After holding a hearing, the trial court entered summary judgment for Sharon on September 23.[1] This appeal ensued.

## DISCUSSION AND DECISION

Eugene appeals the trial court's entry of summary judgment for Sharon. Our standard of review for summary judgment appeals is well established:

> When reviewing a grant of summary judgment, our standard of review is the same as that of the trial court. Considering only those facts that the parties designated to the trial court, we must determine whether there is a "genuine issue as to any material fact" and whether "the moving party is entitled to a judgment a matter of law." In answering these questions, the reviewing court construes all factual inferences in the non-moving party's favor and resolves

---

1. In its order, the trial court stated that it was entering "findings and conclusions." Appellant's App. at 30. But the court did not find specific facts and did not state conclusions based on those facts. Thus, the court entered a general judgment.

all doubts as to the existence of a material issue against the moving party. The moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law; and once the movant satisfies the burden, the burden then shifts to the non-moving party to designate and produce evidence of facts showing the existence of a genuine issue of material fact.

*Dreaded, Inc. v. St. Paul Guardian Ins. Co.*, 904 N.E.2d 1267, 1269–70 (Ind.2009) (citations omitted). The party appealing from a summary judgment decision has the burden of persuading this court that the grant or denial of summary judgment was erroneous. *Knoebel v. Clark County Superior Court No. 1*, 901 N.E.2d 529, 531–32 (Ind.Ct.App.2009). Where the issue presented on appeal is a pure question of law, we review the matter *de novo. Crum v. City of Terre Haute ex rel. Dep't of Redev.*, 812 N.E.2d 164, 166 (Ind.Ct. App.2004).

As an initial matter, we note that Eugene spends a significant portion of his brief asserting that various issues of fact preclude summary judgment. But summary judgment is precluded only when there are genuine issues of *material* fact. *See Madison County Bd. of Comm'rs v. Town of Ingalls*, 905 N.E.2d 1022, 1025 (Ind.Ct.App.2009), *trans. denied.* "A fact is 'material' for summary judgment purposes if it bears on the ultimate resolution of relevant issues." *Yin v. Soc'y Nat'l Bank Ind.*, 665 N.E.2d 58, 64 (Ind.Ct.App. 1996), *trans. denied.* As discussed below, there are no genuine issues of material fact in this appeal.

▮ The dispositive question in this appeal is which statute of limitations applies to Eugene's March 18, 2009, petition to reopen the Estates. The two relevant statutes are Indiana Code Section 29–1–17–13 ("Section 13") and Indiana Code Section 29–1–17–14(a) ("Section 14"):

> Sec. 13. Upon the filing of a supplemental report of distribution together with receipts or other evidence satisfactory to the court that distribution has been made as ordered in the final decree, the court shall enter an order of discharge. *The discharge* so obtained shall operate as a release from the duties of personal representative and *shall operate as a bar to any suit including suits by persons under disability, against the personal representative and his sureties except suits which are commenced within one (1) year from the date of the discharge and are based solely upon alleged mistake, fraud or wilful misconduct on the part of the personal representative.*

> Sec. 14. (a) If, after an estate has been settled and the personal representative discharged, other property of the estate shall be discovered, or if it shall appear that any necessary act remains unperformed on the part of the personal representative, *or for any other proper cause, the court*, upon the petition of the discharged personal representative or any person interested in the estate and, without notice or upon such notice as it may direct, *may order that said estate be reopened.* It may reappoint the personal representative or appoint another personal representative to administer such property or perform such act as may be deemed necessary. Unless the court shall otherwise order, the provisions of this article as to an original administration shall apply to the proceedings had in the reopened administration so far as may be, *but no claim which is already barred can be asserted in the reopened administration.*

(Emphases added.)

▮ On appeal, Sharon contends that Section 13 applies to Eugene's petition to

reopen the Estates. If Section 13 applies, Eugene had one year from the date of the discharge of the personal representatives of the Estates to file his petition to reopen, which he did not do. However, in response Eugene states the following:

> Eugene is doing none of the things barred by [Section 13]. Eugene, in petitioning to reopen the [E]state[s], is not attempting to file a claim against either Sharon or himself for an error or mistake they may have made as co-personal representatives. He is seeking to correct a mistake, not to penalize anyone for making it.

Appellant's Brief at 14. As such, Eugene suggests that his petition is controlled by Section 14. If Eugene's petition was properly filed under Section 14, then Eugene was required to have filed his petition within the general six-year statute of limitations.[2] *See* Ind.Code § 34–11–2–7(3); *Newton v. Hunt*, 122 Ind.App. 146, 155, 103 N.E.2d 445, 448 (1952).

■ Eugene misunderstands the nature of the trial court's order for the final settlement of the Estates and the relationship of Section 13 and Section 14 to that final order. The court's "order or decree for final settlement of an estate possesses the elements of a final judgment. It is conclusive upon interested persons until set aside by an appeal or a proceeding brought for that purpose." *Newton*, 103 N.E.2d at 447 (quotations omitted). Further:

> The approval of the final report of the executrix of the estate ... was a final adjudication as to the rights of the beneficiaries under the will to [the] property of the decedent. Said property was thereafter no longer an asset of the estate, but by said adjudication became vested in the respective beneficiaries according to the terms of said adjudication.
>
> Therefore, as contended by appellee [the original executrix], the appellant [the Section 14 petitioner, who also sought to become the administrator of the reopened estate and] whose authority [in that role] is strictly limited by statute, had no authority to recover for the estate that property which had already been fully administered....

*Id.* One "proceeding" through which one may seek to set aside the final settlement of an estate is provided for by Section 13. Section 13 requires the petitioner to allege misconduct, though not necessarily liability, on the part of a personal representative and must be brought within one year of the date of discharge. *See* I.C. § 29–1–17–13.

■ Section 14, on the other hand, does not provide for a proceeding through which one challenges the original final judgment. Rather, Section 14 applies only to assets unadministered in the original order for the final settlement of an estate. As we have held, Section 14 "was intended to reach, for the benefit of creditors, legatees, and distributees, any assets which had escaped the former administration" of an estate. *McNabb v. Dennis (In re the Estate of McNabb)*, 744 N.E.2d 569, 572 (Ind.Ct.App.2001).

2. To be sure, the statute of limitations applicable for Section 14 petitions begins to accrue against a particular petitioner when he or she knows, or in the exercise of ordinary diligence should have known, of the alleged injury. *See Cooper Indus., LLC v. City of South Bend*, 899 N.E.2d 1274, 1280 (Ind.2009). Section 14 itself "does not limit the time within which an administrator *de bonis non*[, meaning, 'of goods not administered,'] may be appointed," and the general rule is that, so long as there are assets remaining unadministered, such an administrator may be appointed. *McNabb v. Dennis (In re the Estate of McNabb)*, 744 N.E.2d 569, 571 n. 3 (Ind.Ct.App.2001) (citing 1 Henry's Ind. Probate Law & Practice § 807 at 352 (8th ed. 1989)).

The law, as to the effect of the final settlement of the estate ... upon ... property of the estate withheld from the [final] account, has been stated as follows: While presumption is very strong that all the property of the estate has been accounted for, yet such final settlement and the decree of the court thereon is not conclusive as to property accidentally or fraudulently withheld from the account. For a court can not bind the parties by deciding what was not before it.

The law on this point has been concisely stated by this court, as follows: Prior to the taking effect of section 2757 (§ 6–310, Burns' 1933) [now Section 14], the approval of the final settlement of an administrator was an adjudication, whether the administrator had turned into the estate all the personal estate belonging to it and all claims of every nature due to it, and such adjudication was final and conclusive unless appealed from or assailed for mistake or fraud within three years [now one year] after the final settlement. The Legislature by the passage of said section clearly intended to change the former rule so that an estate might have the benefit of assets omitted in the former administration, although there had been a previous final settlement. Under this section the former settlement stands, and, without setting it aside, the estate may be opened for the purpose of administering omitted assets. As said by this court ...: The former settlement continues to be a final adjudication as to all matters except these omitted and unadministered assets. In an earlier case this court said: By the passage of this act it was doubtless intended to reach any assets for the benefit of creditors, legatees, or heirs which had not been administered upon in the former administration.

*Newton,* 103 N.E.2d at 447–48 (emphasis, citations, and quotations omitted).

Here, Eugene sought to reopen the Estates under Section 14 for the sole purpose of correcting an alleged "scrivener[']s error" in the Deed. Appellant's App. at 52. But the real estate was distributed by the Deed in the former administration of the Estates. As such, it is not "an asset which had escaped the former administration," and Eugene cannot use Section 14 to collaterally attack the final judgment on an already-administered asset. *See In re Estate of McNabb,* 744 N.E.2d at 572; *Newton,* 103 N.E.2d at 447–48.

It is important to emphasize that Eugene was not without a remedy for his allegation. But his remedy, if any, was under Section 13.[3] Again, Section 13 permits an interested party to challenge the adjudication of a final settlement for an estate under certain circumstances. "[M]istake ... on the part of the personal representative," such as an alleged scrivener's error on a personal representatives' deed, is one such circumstance. *See* I.C. § 29–1–17–13. As discussed in Henry's:

> to the extent that a petition to reopen the estate is a disguised attempt to modify the decree of distribution and discharge, the one-year time constraint and the misconduct requirements must be complied with. The form of a petition should not govern its substance. Thus, before acting on a petition to reopen an estate, the court must carefully analyze the decree of distribution and discharge in light of the petition to reopen.

---

**3.** Our holding is constrained by the procedural posture of this case, and we express no opinion on whether Eugene has or had other civil remedies available to him outside of the Probate Code.

The distinction between an authorized reopening to administer unadministered property and an untimely attack on the decree of distribution can be demonstrated by the following example[ ]. Assume ... that the personal representative is one of several heirs of the decedent.[4] Assume ... that an item of property was inventoried as an asset of the decedent's estate, accounted for [by] the personal representative, and distributed to the personal representative upon final settlement of the estate, after which the personal representative was discharged. A petition by one of the other heirs to reopen the estate, seeking a different distribution of the item of property, must be made in compliance with [Section 13] within one year after the discharge and must be based on mistake, fraud, or wilful misconduct of the personal representative. The item of property is not unadministered in this example.

1 Henry's Ind. Probate Law & Practice § 8.07 at 8–77 to –78 (2009) (footnote omitted[5]).

Accordingly, in order to correct the alleged scrivener's error on the previously administered Deed, Eugene was obliged to file his petition for relief within one year of the date of the discharge of the co-personal representatives. I.C. § 29–1–17–13. Eugene failed to do so. The date of discharge was January 4, 2008, and it is undisputed that Eugene did not file his petition until more than fourteen months later, on March 18, 2009. Hence, his petition was untimely, and we affirm the trial court's grant of summary judgment to Sharon.

Affirmed.

FRIEDLANDER and BRADFORD, JJ., concur.

---

4. Here, Eugene and Sharon were co-personal representatives in the former administration of the Estates. Although Eugene seeks to reopen the estates on his allegation of mistake by the personal representatives, which, therefore, includes his own mistake, neither party in this appeal suggests that Eugene's petition is prohibited by the invited-error doctrine. Thus, for purposes of the example provided in the text, consider Sharon the only personal representative and Eugene "one of the other heirs."

5. In the omitted footnote, the authors of Henry's suggest that, "[i]n this situation, reopening of the estate would be a proper procedure ... if the recovery would inure to the benefit of the estate. Reopening in this situation would be for 'other proper cause' under [Section 14]." 1 Henry's Ind. Probate Law & Practice § 8.07 at 8–78 n.50. Assuming that comment is accurate, Eugene's claim for relief from the allegedly mistaken Deed inures to his personal benefit and not to that of the estate. See, e.g., Randles v. Ind. Patient's Comp. Fund, 860 N.E.2d 1212, 1220–21 (Ind. Ct.App.2007) ("Damages for the medical, hospital, funeral, and burial expenses inure to the benefit of the estate...."), trans. denied.