

FILED

Oct 10 2017, 8:58 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Alissa Kohlhoff
Kohlhoff Law P.C.
Valparaiso, Indiana

ATTORNEY FOR APPELLEE

Rebecca L. Billick
Billick Mediation & Family Law
Valparaiso, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Guardianship of Nathaniel C. Hurst, *A Minor*, | October 10, 2017 |
| | Court of Appeals Case No. 45A03-1612-GU-2790 |
| Centier Bank and Centier Bank, Personal Representative of the Estate of Luanne Hurst, | Appeal from the Lake Superior Court |
| *Appellant-Defendant,* | The Honorable Nanette R. Raduenz, Special Judge |
| v. | Trial Court Cause No. 45D06-0404-GU-56 |
| Nathaniel C. Hurst, | |
| *Appellee-Plaintiff.* | |

**Robb, Judge.**

# Case Summary and Issue

[1] Centier Bank ("Bank") appeals the trial court's denial of its motion for summary judgment in Nathaniel Hurst's action against it and Patrick and Michelle Hurst (the "Hursts"), wherein Nathaniel alleges he suffered damages as a result of fraudulent acts committed by the Bank during its administration of Nathaniel's mother's estate and by the Hursts during their guardianship of Nathaniel's estate. The Bank raises two issues for our review, which we consolidate and restate as whether the trial court erred in denying the Bank's motion for summary judgment. Concluding the trial court did not err, we affirm.

# Facts and Procedural History

[2] In 2004, Luanne Hurst ("Mother"); her eight-year-old son, Nathaniel; and her boyfriend, Robert Suarez, lived in Mother's house in Lake County, Indiana. In March 2004, Mother passed away, leaving Nathaniel as her sole heir. Thereafter, Suarez was appointed personal representative of Mother's estate and guardian of Nathaniel's person; the Hursts, as Nathaniel's aunt and uncle, were appointed guardians of Nathaniel's estate.

[3] In March 2005, the Hursts filed an accounting showing the value of Nathaniel's estate was approximately $72,000.00. In November 2005, the Hursts moved the trial court to remove Suarez as personal representative of Mother's estate and to appoint the Bank, which the trial court granted. Thereafter, the Hursts

and the Bank were represented by the same attorney and the administration of Mother's estate was unsupervised. In March 2006, the Bank evicted Suarez, and in turn, Nathaniel from Mother's house. The Bank filed an accompanying affidavit swearing the estimated value of Mother's real estate at the time was $94,000.00. In November 2008, the Bank moved to close Mother's estate and filed a closing statement evidencing the liquidation of Mother's assets and payments made by the Bank on behalf of Mother. The closing statement details the Bank, in its capacity as personal representative, disbursed to itself approximately $57,000.00 of Mother's assets; approximately $7,000.00 to Patrick Hurst, individually; and approximately $1,750.00 to the Hursts as guardians of Nathaniel's estate. A copy of the closing statement was sent to the Hursts, who did not object. On April 29, 2009, the trial court ordered Mother's estate closed.

[4] On September 12, 2013, Nathaniel turned eighteen years old. On July 15, 2014, the Hursts filed a final report and accounting of Nathaniel's estate and petitioned the trial court to terminate their guardianship over the estate. The final accounting listed Nathaniel's assets at approximately $3,000.00. Nathaniel filed an objection. Discovery ensued and on July 28, 2015, Nathaniel moved to join the Bank after learning the Bank may have "committed acts of negligence, fraud, inadequate disclosure, or misrepresentation." Brief of the Appellee at 13. Nathaniel also served the Bank with a summons. The trial court granted Nathaniel's motion and the Bank was joined as a party to the guardianship matter on August 6, 2015.

[5]     A week later, the Bank filed a Motion to Dismiss for Failure to File within Statute of Limitations, arguing Nathaniel's claims were barred by Indiana Code section 29-1-7.5-6's three-month statute of limitations or Indiana Code section 29-1-1-21's one-year statute of limitations and therefore Nathaniel's motion for joinder should be dismissed. Following a hearing, the trial court denied the Bank's motion without addressing the Bank's statute of limitations claims, reasoning the Bank was an indispensable party pursuant to Trial Rule 19. The Bank then filed a motion to correct error, which the trial court denied.

[6]     On March 23, 2016, Nathaniel filed a complaint for damages under this same cause number against the Hursts and the Bank, alleging the Hursts and the Bank committed fraud resulting in Nathaniel's low inheritance. On July 21, 2016, the Bank filed a second Motion to Dismiss for Failure to File within Statute of Limitations, raising the same arguments noted above. The trial court denied the motion. The Bank then filed what it titled a motion to correct error. Before addressing the merits of the Bank's arguments, the trial court noted it had treated the Bank's motion to dismiss as a motion for summary judgment and explained its order denying the Bank summary judgment was not a final appealable order. Therefore, the trial court also explained it was considering

the Bank's motion to correct error as a motion to reconsider.[1]  The trial court then denied the Bank's motion to reconsider.  This appeal ensued.

# Discussion and Decision

## I. Timeliness of Appeal

We must first consider the timeliness of this appeal.  Indiana Appellate Rule 9 provides that parties may initiate an appeal by filing a notice of appeal within thirty days after entry of an appealable order.  Generally, the appealable order will be a final judgment.  Ind. Appellate Rule 9(A)(1); *In re D.J. v. Ind. Dep't of Child Servs.*, 68 N.E.3d 574, 578 (Ind. 2017).  However, not all orders must be final to be appealable, as Appellate Rule 14 allows a party to pursue an appeal of an interlocutory order as either a matter of right or discretion.  Here, the Bank's notice of appeal indicates it is appealing from a final judgment, despite the fact a ruling denying a motion for summary judgment is not final, a fact the trial court explicitly made clear when ruling on the Bank's motion to reconsider. In addition, it does not appear the trial court's order denying the Bank summary judgment touches on any of the enumerated interlocutory orders set out in Appellate Rule 14(A) that allow an interlocutory appeal as a matter of right.  Therefore, the Bank's appeal is a discretionary interlocutory

---

[1] "[M]otions to correct error are proper only after the entry of final judgment; any such motion filed prior to the entry of final judgment must be viewed as a motion to reconsider."  *Snyder v. Snyder*, 62 N.E.3d 455, 458 (Ind. Ct. App. 2016).

appeal, which requires the trial court to certify the order for appeal and this court to accept jurisdiction over the appeal. App. R. 14(B)(1). Our review of the record reveals the Bank did not request the trial court certify any of its orders for interlocutory appeal and therefore the Bank's appeal is untimely.[2]

[8] As our supreme court recently made clear, "the reviewing court is not deprived of jurisdiction if the notice of appeal is untimely – meaning belated or premature." *D.J.*, 68 N.E.3d at 578. In those circumstances, the appellate court may choose to exercise its discretion and address the merits of a forfeited appeal despite the procedural default. *Id.* at 578-59; *In re O.R.*, 16 N.E.3d 965, 971-72 (Ind. 2014). Every order, then, is in a sense appealable. Although Appellate Rule 14 and *In re D.J.* appear to be at odds, both are products of our supreme court, and we must assume the court was aware of the implications its decision in *D.J.* would have on Rule 14. Viewing the Appellate Rules through the lens of *D.J.* and *O.R.*, the procedural rules are not immutable; they are guidelines. *See* App. R. 1 ("The Court may, upon the motion of a party or the Court's own motion, permit deviation from these Rules."). The Rules impose a framework for how orders are to be appealed—by granting absolute rights with

---

[2] In addition to this being a discretionary interlocutory appeal which the Bank did not properly initiate, a motion to reconsider does not extend the thirty-day period within which a party wishing to appeal must do so. *Snyder*, 62 N.E.3d at 459. Thus, the Bank's appeal is in a sense both early – in that it was filed without authorization – and late – in that it was filed more than thirty days after the order being appealed was entered.

respect to some orders and discretionary rights with respect to others. But in either case, the rights can be forfeited, and they can be revived in our discretion.

[9] As we have noted, the Bank forfeited its right to pursue its discretionary appeal by prematurely filing its Notice of Appeal. We do not read *D.J.* to excuse parties in general from their duty to follow our procedural rules in pursuing an appeal and we do not condone the way these parties in particular have treated this appeal as if it was from a final judgment when it clearly was not. But a summary judgment ruling on a statute of limitations argument is a classic discretionary interlocutory appeal issue and it is clear both parties seek an early appellate resolution of this threshold issue—notably, Nathaniel did not raise the issue of timeliness to this court. Whether we dismiss this case due to a procedural default or decide the issue as we have herein, the case will go on. The benefit of deciding the case now is that the statute of limitations question will not cloud the balance of the litigation and risk wasting the resources of the parties and the trial court. We therefore opt to exercise our discretion in this case and decide the merits of the statute of limitations arguments made by the parties to provide clarity and certainty to the parties going forward.

## II. Summary Judgment Standard of Review

[10] When reviewing a grant of summary judgment, our standard of review is the same as that of the trial court. Considering only those facts that the parties designated to the trial court, we must determine whether there is a "genuine issue as to any material fact" and whether "the moving party is entitled to a judgment [as] a matter of law." In answering these questions, the reviewing court construes all factual inferences in the non-

moving party's favor and resolves all doubts as to the existence of a material issue against the moving party. The moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law; and once the movant satisfies the burden, the burden then shifts to the non-moving party to designate and produce evidence of facts showing the existence of a genuine issue of material fact.

*In re Estate of Kalwitz*, 923 N.E.2d 982, 984-85 (Ind. Ct. App. 2010) (citation omitted), *trans. denied*.

# III. Statutes of Limitation

[11] In its motion for summary judgment, and now on appeal, the Bank argues two statute of limitation provisions in the probate code bar Nathaniel's claims. We disagree.

[12] The Bank first cites to Indiana Code section 29-1-7.5-6, which provides,

> Unless previously barred by adjudication and except as provided in the closing statement, all claims against the personal representative, including claims by a person under a disability, are barred unless a proceeding to assert the claim is commenced within three (3) three months after the filing of the closing statement. The rights thus barred do not include rights to recover from a personal representative for fraud, misrepresentation, or inadequate disclosure related to the settlement of the decedent's estate.

This section is unavailing to the Bank because the section specifically provides the rights barred *do not include* the right to recover from a personal representative

for fraud, misrepresentation, or inadequate disclosure, and Nathaniel's claims against both the Bank and the Hursts sound in fraud.[3] For this reason, Indiana Code section 29-1-7.5-6 is not applicable as a bar to Nathaniel's claims.

[13] The Bank also cites to Indiana Code section 29-1-1-21, which provides in relevant part, "For illegality, fraud or mistake, upon application filed within one (1) year after the discharge of the personal representative upon final settlement, the court may vacate or modify its orders, judgments and decrees or grant a rehearing therein." This section also does not apply as a bar to Nathaniel's claims as it is clear from the language that the one-year statute of limitations only bars attempts to modify or vacate a probate order as a result of illegality, fraud, or mistake. Although Nathaniel's claims sound in fraud, he is not seeking to modify or vacate any of the trial court's orders regarding the closing of Mother's estate, nor is he seeking to reopen Mother's estate in an attempt to recover her assets; rather he is seeking *damages* from the Bank and the Hursts. The Bank's arguments fail as a matter of law and the trial court did not err in denying its motion for summary judgment.

[14] Although the following discussion is not necessary for the purposes of this appeal, it appears the probate code and case law suggest the statute of

---

[3] Although Nathaniel's complaint does not specifically allege "fraud," the allegations and claims included in the complaint sound in fraud. *See Plymale v. Upright*, 419 N.E.2d 756, 759 (Ind. Ct. App. 1981) ("Fraud in its generic sense . . . comprises all acts, omissions, and concealments involving a breach of legal or equitable duty and resulting in damage to another.") (citation omitted). To the extent the Bank argues Nathaniel's complaint does not sufficiently plead a claim of fraud, the Bank fails to cite to any authority supporting such a claim. This argument is therefore waived for failure to present a cogent argument. *See* App. R. 46(A)(8)(a).

limitations governing claims of fraud as found in the civil code should govern

Nathaniel's claims. Section 29-1-1-24 of the probate code provides,

> Whenever fraud has been perpetrated in connection with *any*
> proceeding or in *any* statement filed under this probate code or if
> fraud is used to avoid or circumvent the provisions or purposes of
> this probate code, *any* person injured thereby may obtain
> appropriate relief *against the perpetrator of the fraud . . . .*

(Emphasis added.) A comment to this provision by the Indiana Probate Code

Study Commission explains:

> This amendment is patterned after Section 1-106 of the Uniform
> Probate Code. *This amendment differs from Section 1-106 in that*
> *under this amendment the statute of limitations provided in the civil code*
> *applies.* The following portion of the Uniform Probate Code
> official comment is pertinent:
>
> OFFICIAL COMMENT TO UNIFORM PROBATE CODE
>
> This is an overriding provision that provides an exception to the
> procedures and limitations provided in the Code. The remedy of
> a party wronged by fraud is intended to be supplementary to
> other protections provided in the Code and can be maintained
> outside the process of settlement of the estate. Thus, if a will
> which is known to be forgery is probated informally, and the
> forgery is not discovered until after the period for contest has run,
> the defrauded heirs still could bring a fraud action under this
> section. Or if a will is fraudulently concealed after the testator's
> death there still may be an action under this section. *Similarly, a*
> *closing statement normally provides binding protection for the personal*
> *representative. However, if there is fraudulent misrepresentation or*
> *concealment in the preparation of the claim, a later suit may be brought*
> *under this section against the personal representative for damages*; or

restitution may be obtained from those distributes who benefit
by the fraud.  In any case innocent purchasers for value are
protected.

(Emphasis added.)  These comments recognize what the Bank now asserts on appeal: a closing statement *typically* provides binding protection to the personal representative of an estate.  However, our legislature carved out an exception to the protections granted to personal representatives, and when confronted with a suit for damages against a personal representative for fraud, we look to the statute of limitations for fraud provided in the civil code.  *See In re Estate of McNabb*, 744 N.E.2d 569, 574 (Ind. Ct. App. 2001) (suggesting a cause of action for fraud against the personal representative of an unsupervised estate would likely be governed by the statute of limitations applicable to fraud).

[15]     In Indiana, actions for relief against fraud must be commenced within six years after the cause of action accrues.  Ind. Code § 34-11-2-7.

> In assessing the accrual of a cause of action for fraud, this court
> has determined that the discovery rule is applicable. The cause of
> actions accrue and the statute of limitations begins to run when
> the plaintiff knew or, in the exercise of ordinary diligence, could
> have discovered that an injury had been sustained as a result of
> the tortious act of another.  Thus, the statute runs when the
> resultant damage of a tortious act is susceptible of ascertainment.

*Estates of Kalwitz v. Kalwitz*, 717 N.E.2d 904, 914 (Ind. Ct. App. 1999).

[16]     Assuming Indiana Code section 34-11-2-7 applies to Nathaniel's claims, the Bank does not set forth any argument or cite any facts from the record

demonstrating on what date Nathaniel knew or could have discovered the alleged fraud; rather, it merely assumes any cause of action for fraud began running in April 2009 when Mother's estate was closed. *See* Corrected Appellant's Brief at 16. This issue, left unaddressed by the Bank, is crucial to determining whether Nathaniel's claims are barred by the statute of limitations found in Indiana Code section 34-11-2-7, and contrary to the Bank, Nathaniel has designated facts alleging the statute of limitations did not begin to run until the Hursts filed a final accounting of his assets in July 2014, when he first learned of his diminished inheritance. Thus, to the extent the Bank argues Indiana Code section 34-11-2-7 bars Nathaniel's claims, the Bank has failed to meet its burden of proving there is no genuine issue of material fact as to when the six-year statute of limitations began to run.[4]

[17] The Bank, as the party moving for summary judgment, had the burden of designating evidence sufficient to show no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. The Bank did not meet this burden.[5]

# Conclusion

---

[4] Because there is a genuine issue of material fact as to when the statute of limitations accrued, we need not determine when the statute of limitations expired, the approximate date Nathaniel commenced this action, or whether Indiana Code section 34-11-6-1, which allows a person under a legal disability when the statute of limitations accrues two years after the disability is removed to bring a claim, applies to Nathaniel's claims.

[5] For failure to present a cogent argument, Nathaniel's request for appellate attorney fees is denied. *See* Appellate R. 46(A)(8)(a).

[18] The trial court did not err in denying the Bank's motion for summary judgment. Accordingly, we affirm.

[19] Affirmed.

Bailey, J., concurs.

Vaidik, C.J., dissents with opinion.

ATTORNEY FOR APPELLANT

Alissa Kohlhoff
Kohlhoff Law P.C.
Valparaiso, Indiana

ATTORNEYS FOR APPELLEE

Rebecca L. Billick
Billick Mediation & Family Law
Valparaiso, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Guardianship of Nathaniel C. Hurst, *A Minor*, <br><br> Centier Bank and Centier Bank, Personal Representative of the Estate of Luanne Hurst, <br><br> *Appellant-Defendant,* <br><br> v. <br><br> Nathaniel C. Hurst, <br><br> *Appellee-Plaintiff.* | Court of Appeals Case No. 45A03-1612-GU-2790 |

**Vaidik, Chief Judge, dissenting.**

[20] I respectfully dissent. I understand the majority's desire to resolve this case early. However, Appellate Rule 14 very clearly lays out how a party can pursue an interlocutory appeal, either by right or by certification of the trial court. The

majority acknowledges, and I agree, that neither provision of Appellate Rule 14 has been met for an interlocutory appeal. *See* slip op. pp. 5-6. Because the trial court's order does not satisfy 14(A) and the Bank's appeal does not meet the requirements of 14(B), the trial court's order is not appealable. Therefore, we do not have jurisdiction to hear this appeal. *See Daimler Chrysler Corp. v. Yaeger*, 838 N.E.2d 449 (Ind. 2005) (dismissing Daimler's appeal because it was not an interlocutory appeal by right and Daimler did not seek certification from the trial court to initiate an interlocutory appeal).

[21] Nevertheless, the majority decides to adjudicate the case. The majority relies on the holding in *D.J.* to support its decision to accept the Bank's appeal. 68 N.E.3d 574 (Ind. 2017). *D.J.* is inapposite. In *D.J.*, the trial court issued an appealable order between the filing of the notice of appeal and counsel's briefing of the issues. *Id.* at 577. Here, no appealable order has been entered. In the absence of an appealable order, we have no jurisdiction to hear this appeal. *Id.* at 578 ("The only two prerequisites under our appellate rules are (i) the trial court must have entered an appealable order, and (ii) the trial clerk must have entered the notice of completion of clerk's record on the CCS."). *D.J.* should not to be interpreted as a means of avoiding the strictures of Appellate Rule 14. As a result, I disagree with the majority's decision to reach the merits and would dismiss the Bank's appeal.